# IN THE SIXTEENTH JUDICIAL CIRCUIT COURT FOR JACKSON COUNTY, MISSOURI AT INDEPENDENCE

HOLLIDAY SAND & GRAVEL COMPANY, )
INC., as successor to HOLLIDAY SAND & )
GRAVEL COMPANY, LLC, )
11011 Cody Street )
Overland Park, Kansas 66210 )
 )
and )
 )
ASH GROVE AGGREGATES, INC., ) Case No. _____
11011 Cody Street )
Overland Park, Kansas 66210 )
 )
       **Plaintiffs,** )
vs. )
 )
**AXIS INSURANCE COMPANY,** )
**SERVE:** AXIS Insurance Company )
      c/o Missouri Department of Insurance )
      Director of Insurance )
      301 W. High Street, Room 530 )
      Jefferson City, MO 65101 )
 )
**ZURICH AMERICAN INSURANCE** )
**COMPANY,** )
**SERVE:** Zurich American Insurance Company )
      c/o Missouri Department of Insurance )
      Director of Insurance )
      301 W. High Street, Room 530 )
      Jefferson City, MO 65101 )
 )
and )
 )
**NEW YORK MARINE AND GENERAL** )
**INSURANCE COMPANY,** )
**SERVE:** New York Marine and General Insurance )
      Company )
      c/o Missouri Department of Insurance )
      Director of Insurance )
      301 W. High Street, Room 530 )
      Jefferson City, MO 65101 )
 )
       **Defendants.** )

## PETITION

COME NOW Plaintiffs Holliday Sand & Gravel Company, Inc. (f/k/a Holliday Sand & Gravel Company, LLC), and Ash Grove Aggregates, Inc. (collectively, the "Insureds") and for their Petition against AXIS Insurance Company, Zurich American Insurance Company, and New York Marine and General Insurance Company (collectively, the "Defendants"), hereby state and allege as follows:

## NATURE OF THE ACTION

1. This is an insurance coverage action for breach of contract, vexatious refusal to pay a claim pursuant to Mo. Rev. Stat. §§ 375.296 and 375.420, and declaratory relief. The Insureds bring this action against the Defendants concerning insurance coverage for costs incurred and paid by the Insureds to defend and settle, and pay "maintenance and cure" benefits in conjunction with,[1] the lawsuit styled *King v. Ash Grove Aggregates, Inc. et al.*, filed in the Circuit Court of Jackson County, Missouri originally under Case No. 1616-CV24615 and later refiled under Case No. 1716-CV10006 (the "Underlying Action").

2. In 2016, Christopher King, a former crew member of a vessel or vessels owned by Holliday Sand & Gravel Company, Inc., (f/k/a Holliday Sand & Gravel Company, LLC) filed suit against the Insureds seeking damages and maintenance and cure benefits for (among other things) alleged injuries and illnesses, including emotional distress, in connection with his work aboard Holliday's vessels. Additionally, Mr. King's wife, Deborah King, later asserted a loss of consortium claim against the Insureds arising from the alleged injuries and illnesses, including emotional distress, sustained by her husband.

---

[1] Under the Jones Act, 46 U.S.C. § 30104, *et seq.*, employers are obligated to pay "maintenance and cure" benefits to certain employees for medical care allegedly caused during the course of employment.

2

3. Despite the fact that the Insureds annually purchased several insurance policies to protect themselves against exactly the types of liability asserted in the Underlying Action, the Defendants have refused to reimburse the Insureds for a majority of the defense, benefits, and settlement costs expended in connection with the Underlying Action, which unreimbursed amount totals $1,685,000 million. Accordingly, the Insureds have filed this action seeking damages for breach of contract, vexatious refusal to pay a claim, and for a determination of the parties' respective rights arising under the various policies issued by the Defendants.

## THE PARTIES

4. Plaintiff Holliday Sand & Gravel Company, Inc., (f/k/a Holliday Sand & Gravel Company, LLC) ("Holliday") is a corporation duly organized under the laws of Missouri and maintains its principal place of business in Kansas. Holliday Sand & Gravel Company, Inc. was formerly known as Holliday Sand & Gravel Company, LLC and changed its name by virtue of a corporate conversion that occurred on November 6, 2019. At all relevant times hereto, Holliday Sand & Gravel Company, LLC was a limited liability company duly organized under the laws of the State of Missouri and conducted business in the State of Missouri. At all times relevant hereto, the sole member of Holliday Sand & Gravel Company, LLC was Ash Grove Materials Corporation, a Delaware corporation with a principal place of business in Kansas.

5. Ash Grove Aggregates, Inc. ("Ash Grove") is also a corporation duly organized under the laws of Missouri with its principal place of business in Kansas, and at all relevant times conducted business in the State of Missouri.

6. On information and belief, AXIS Insurance Company ("AXIS") is an Illinois insurance company with its principal place of business in Illinois that, at all times relevant to this action, transacted business and issued casualty insurance in the State of Missouri.

7. On information and belief, Zurich American Insurance Company ("Zurich") is a New York insurance company with its principal place of business in Illinois, and a New York statutory home office, that, at all times relevant to this action, transacted business and issued casualty insurance in the State of Missouri.

8. On information and belief, New York Marine and General Insurance Company ("NY Marine") is a New York corporation with its principal place of business in New Jersey that, at all times relevant to this action, transacted business and issued casualty insurance in the State of Missouri.

**JURISDICTION AND VENUE**

9. This Court has jurisdiction over each of the named Defendants of this action pursuant to Mo. Rev. Stat. § 506.500(1), (2), and (5) because the Defendants are or were, at all relevant times, licensed to sell insurance in the State of Missouri, engaged in the business of writing insurance policies in the State of Missouri, transacted business within Missouri and/or contracted to insure property located within the State of Missouri.

10. This Court has jurisdiction over the subject matter of this action pursuant to Mo. Const. Art. V, § 14 which bestows all circuit courts original jurisdiction over all civil cases.

11. Venue is proper in this Circuit Court of Jackson County, Missouri pursuant to Mo. Rev. Stat. § 508.010.4.

**FACTS**

12. The Insureds reallege and incorporate by reference all proceeding paragraphs as if fully set forth herein.

## A. *The Underlying Action For Which The Insureds Seek Insurance Coverage*

13. The Insureds were both initially named as defendants in the Underlying Action, captioned *King v. Ash Grove Aggregates, Inc. et al.*, filed in the Circuit Court of Jackson County, Missouri, originally under Case No. 1616-CV24615 and later refiled under Case No. 1716-CV10006. Ash Grove was eventually dismissed from the Underlying Action after it was refiled.

14. In the Underlying Action, plaintiff Christopher King made numerous allegations against the Insureds regarding injuries and illnesses, including emotional distress, sustained by Mr. King while working aboard certain vessels owned by one or more of the Insureds, and he pleaded multiple theories of recovery including counts for negligence, unseaworthiness, and maintenance and cure benefits. After the Underlying Action was refiled, plaintiff Deborah King (Christopher King's wife) added a loss of consortium claim, which was later dismissed.

15. Mr. King, and for a period of time Mrs. King, alleged that, from 2008 through 2016, while in the Insureds' employ, Mr. King was exposed to conditions, activities, and/or substances that caused or contributed to his alleged injuries and illnesses, including emotional distress. More specifically, Mr. and Mrs. King claim that, during the course of his employment as a member of a crew aboard vessels owned by one or more of the Insureds, Mr. King was exposed to (among other things) toxic hydrocarbons and other alleged hazardous chemicals in the Missouri River as well as in fuel, fumes, diesel exhaust, and particulates.

16. The Underlying Action alleges exposure to these substances in and around Missouri River caused Mr. King to "develop severe, disabling medical conditions" including but not limited to physical pain and mental anguish. The Underlying Action further alleges that, by reason of the Insureds' conduct, Mr. King "sustained a severe and disabling illness for which he has needed and continues to need medical care and from which he has not yet been cured."

17. In his original Petition, Mr. King also made allegations arising from an alleged incident in June of 2013 during which the vessel on which he was working purportedly capsized, causing him to fall overboard into the Missouri River. As a result of this incident, Mr. King claims he ingested contaminated water, fuel, fumes containing metals, and other pollutants, and was exposed to toxic hydrocarbons and other chemicals that were in the Missouri River, causing him injuries and illnesses, including emotional distress.

18. In response to the allegations in the Underlying Action, the Insureds denied, and continue to deny, that Mr. King was exposed to conditions, activities, and/or substances during the course of his employment that would have caused or contributed to his alleged injuries and illnesses, including emotional distress. The Insureds further denied, and continue to deny, all other allegations asserted in the Underlying Action, including claims that Mr. King was not provided proper maintenance and cure benefits, that the Insureds were in any way negligent, that Mr. King's alleged injuries and illnesses, including emotional distress, were caused, in whole or in part, by the unseaworthiness of the Insureds' vessels and that Mrs. King is entitled to any damages for loss of consortium.

### B. *The Insurance Policies at Issue*

19. From 2007 to 2016 (during Mr. King's alleged period of exposure and injury), the Defendants sold primary and/or excess protection and indemnity ("P&I") insurance (collectively, the "P&I Policies") that provide insurance coverage to the Insureds for the claims asserted in the Underlying Action. These P&I Policies include: (1) six consecutive annual primary P&I Policies issued by AXIS from October 2007 to October 2013; (2) three consecutive annual primary P&I Policies issued by Zurich from October 2013 to October 2016; and (3) nine consecutive annual first-layer excess P&I Policies issued by NY Marine from October 2007 to October 2016.

*AXIS Primary P&I Policies*

20. From October 1, 2007 through October 1, 2013, in consideration of substantial premiums paid by one or more of the Insureds and/or their affiliates or predecessors-in-interest, AXIS issued insurance policies that provide primary P&I coverage to the Insureds (collectively, the "AXIS Primary P&I Policies"). A list of the AXIS Primary P&I Policies is as follows:

- Policy No. UMS-3201101-07, effective from October 1, 2007 through October 1, 2008;
- Policy No. UMS-3201101-08, effective from October 1, 2008 through October 1, 2009;
- Policy No. UMS-1200358-09, effective from October 1, 2009 through October 1, 2010;
- Policy No. UMS-1200460-10, effective from October 1, 2010 through October 1, 2011;
- Policy No. UMS-1201194-11, effective from October 1, 2011 through October 1, 2012; and
- Policy No. UMS-1201271-12, effective from October 1, 2012 through October 1, 2013.

21. At all times relevant to this action, the AXIS Primary P&I Policies were in full force and effect, and the Insureds and/or their affiliates or predecessors-in-interest have fully complied with the terms and conditions of the AXIS Primary P&I Policies.

22. The Insureds and/or their affiliates or predecessors-in-interest paid AXIS all required premiums in consideration for the coverage provided by the AXIS Primary P&I Policies, and all conditions precedent to coverage under the AXIS Primary P&I Policies have occurred, been satisfied, or been waived.

23. The AXIS Primary P&I Policies insure against all liability for injury, illness or death arising from the ownership of certain named vessels. More specifically, the Protection and Indemnity Clauses of the AXIS Primary P&I Policies provide, in pertinent part, that AXIS:

> hereby undertakes to pay up to the amount hereby insured . . . such sums the assured, as owner of the Vessels As Per Schedule shall have become legally liable to pay and shall have paid on account of:
>
> > Loss of life of, or injury to, or illness of, any person;
> >
> > Hospital, medical, or other expenses necessarily and reasonably incurred in respect of loss of life of, injury to, or illness of any member of the crew of the vessel named herein.
> >
> > …
> >
> > Costs and expenses, incurred with this Company's approval, of investigating and/or defending any claim or suit against the assure arising out of a liability or an alleged liability of the assured covered by this policy.
>
> …

24. Mr. King, and for a period of time Mrs. King, allege in the Underlying Action Mr. King's injuries and illnesses, including emotional distress, occurred as a result of his work on a vessel or vessels that were at all times relevant hereto scheduled in the AXIS Primary P&I Policies.

25. Under the terms and conditions of the AXIS Primary P&I Policies, and subject to a single deductible (which has been satisfied) and its available policy limits, AXIS is required to pay on behalf of the Insureds all sums that they have incurred in connection with the Underlying Action, which include defense costs, maintenance and cure benefits, and settlement costs paid by the Insureds in connection with the Underlying Action.

*Zurich Primary P&I Policies*

26. From October 1, 2013 through October 1, 2016, in consideration of substantial premiums paid by one or more of the Insureds and/or their affiliates or predecessors-in-interest,

Zurich issued insurance policies that provide primary P&I coverage to the Insureds (collectively, the "Zurich Primary P&I Policies"). A list of the Zurich Primary P&I Policies is as follows:

- Policy No. MH 5844928 00, effective from October 1, 2013 through October 1, 2014;
- Policy No. MH 5844928 01, effective from October 1, 2014 through October 1, 2015; and
- Policy No. MH 5844928 02, effective from October 1, 2015 through October 1, 2016.

27. At all times relevant to this action, the Zurich Primary P&I Policies were in full force and effect, and the Insureds and/or their affiliates or predecessors-in-interest have fully complied with the terms and conditions of the Zurich Primary P&I Policies.

28. The Insureds and/or their affiliates or predecessors-in-interest paid Zurich all required premiums in consideration for the coverage provided by the Zurich Primary P&I Policies, and all conditions precedent to coverage under the Zurich Primary P&I Policies have occurred, been satisfied, or been waived.

29. The Zurich Primary P&I Policies insure against all liability for injury, illness or death arising from the ownership of certain named vessels. More specifically, the Protection and Indemnity Clauses of the Zurich Primary P&I Policies provide, in pertinent part, that Zurich:

> hereby undertakes to pay up to the amount hereby insured . . . such sums the assured, as owner of the Vessels As Per Schedule shall have become legally liable to pay and shall have paid on account of:
>
> Loss of life of, or injury to, or illness of, any person;
>
> Hospital, medical, or other expenses necessarily and reasonably incurred in respect of loss of life of, injury to, or illness of any member of the crew of the vessel named herein.

> …
>
> Costs and expenses, incurred with this Company's approval, of investigating and/or defending any claim or suit against the assure arising out of a liability or an alleged liability of the assured covered by this policy.
>
> …

30. Mr. King, and for a period of time Mrs. King, allege in the Underlying Action that Mr. King's injuries and illnesses, including emotional distress, occurred as a result of his work on a vessel or vessels that were at all times relevant hereto scheduled in the Zurich Primary P&I Policies.

31. Under the terms and conditions of the Zurich Primary P&I Policies, and subject to a single deductible (which has been satisfied) and its available policy limits, Zurich is required to pay on behalf of the Insureds all sums that they have incurred in connection with the Underlying Action, which include defense costs, maintenance and cure benefits, and settlement costs paid by the Insureds in connection with the Underlying Action.

*NY Marine Excess P&I Policies*

32. From October 1, 2007 through October 1, 2016, in consideration of substantial premiums paid by one or more of the Insureds and/or their affiliates or predecessors-in-interest, NY Marine issued insurance policies that provide first-layer excess P&I coverage to the Insureds (collectively, the "NY Marine Excess P&I Policies"). A list of the NY Marine Excess P&I Policies is as follows:

- Policy No. 26992ML407, effective from October 1, 2007 through October 1, 2008;

- Policy No. ML10098208, effective from October 1, 2008 through October 1, 2009;

10

- Policy No. ML10098209, effective from October 1, 2009 through October 1, 2010;

- Policy No. ML10098210, effective from October 1, 2010 through October 1, 2011;

- Policy No. ML10098211, effective from October 1, 2011 through October 1, 2012;

- Policy No. ML10098212, effective from October 1, 2012 through October 1, 2013;

- Policy No. ML201300000830, effective from October 1, 2013 through October 1, 2014;

- Policy No. ML201400000830, effective from October 1, 2014 through October 1, 2015; and

- Policy No. ML201500000830, effective from October 1, 2015 through October 1, 2016.

33. At all times relevant to this action, the New York Marine Excess P&I Policies were in full force and effect, and the Insureds and/or their affiliates or predecessors-in-interest have fully complied with the terms and conditions of the New York Marine Excess P&I Policies.

34. The Insureds and/or their affiliates or predecessors-in-interest paid NY Marine all required premiums in consideration for the coverage provided by the NY Marine Excess P&I Policies, and all conditions precedent to coverage under the NY Marine Excess P&I Policies have occurred, been satisfied, or been waived.

35. The Excess Protection and Indemnity clause of the NY Marine Excess P&I Policies provides, in pertinent part, that NY Marine:

agrees to indemnify the Assured for all liability, loss, damage or expense insured against under the Protection and Indemnity policies described in the Schedule of Underlying Insurances . . . but this insurance is warranted free from claim hereunder unless such liability in respect of the same accident (or occurrence, if the Limits of Liability of the Primary Policies are written on an occurrence basis) exceeds the Limits of Liability of the Primary Policies in which event these Underwriters [NY Marine] shall be liable only for the amount by which such liability exceeds such underlying Limits of Liability, but in no event for more than the Limits of Liability of this Insurance.

36. The Schedule of Underlying Insurances included in each of the annual NY Marine Excess P&I Policies effective from October 1, 2007 to October 1, 2013 describes the underlying P&I policy as the AXIS Primary P&I Policy, the pertinent terms of which are listed above, and which provides coverage for the Underlying Action, that was effective during the same policy period as the corresponding NY Marine Excess P&I Policy. The Schedule of Underlying Insurances included in each of the annual NY Marine Excess P&I Policies effective from October 1, 2013 to October 1, 2016 describes the underlying P&I policy as the Zurich Primary P&I Policy, the pertinent terms of which are listed above, and which provides coverage for the Underlying Action, that was effective during the same policy period as the corresponding NY Marine Excess P&I Policy.

37. Under the terms and conditions of the NY Marine Excess P&I Policies, subject to exceeding the limit of the corresponding AXIS or Zurich Primary P&I Policy and subject to NY Marine's available policy limits, NY Marine is required to pay on behalf of the Insureds all sums that they have incurred in connection with the Underlying Action, which include defense costs, maintenance and cure benefits, and settlement costs paid by the Insureds in connection with the Underlying Action.

*C.*     *The Insurance Claim and Settlement of the Underlying Action*

38.     The Insureds and/or their affiliates, predecessors-in-interest, or brokers provided the Defendants notice of the claims asserted against the Insureds in the Underlying Action during or about June or July 2016, following the Insureds' receipt of demand letters from Mr. King's counsel.  Thereafter, the Insureds timely informed Defendants about the filing of the Underlying Action and kept Defendants updated on significant events.

39.     None of the Defendants expressly acknowledged coverage for the Underlying Action or agreed to provide the Insureds or their predecessors-in-interest coverage for defense costs, maintenance and cure benefits, or indemnification against judgments or settlements.  Rather, the Defendants (either expressly or implicitly) refused to pay any of these amounts until the Insureds' incurred costs exceeded the total combined amount of all deductibles under the 2007 – 2016 AXIS and Zurich Primary P&I Policies, an amount totaling $1,770,000.

40.     In the meantime, the Insureds or their predecessors-in-interest were required to fund their own defense and maintenance and cure benefits until late 2019, when they were approached with a settlement offer within the Defendants' collective insurance limits.

41.     After negotiating with Mr. King, the Insureds presented a final settlement demand to the Defendants, and the Defendants agreed to contribute insurance proceeds toward the settlement, but only in an amount that, after taking into account paid defense costs and maintenance and cure benefits, exceeded all deductibles under the 2007 – 2016 AXIS and Zurich Primary P&I Policies, forcing the Insureds to pay the first $1,770,000 (the sum of all deductibles) in defense costs, maintenance and cure benefits, and settlement costs.

42.     The Insureds disputed, and still dispute, that they were required to pay $1,770,000 in deductibles before obtaining coverage for the Underlying Action under the P&I Policies and

13

32737932
Case 4:21-cv-00060-HFS   Document 1-1   Filed 01/29/21   Page 13 of 19

Electronically Filed - Jackson - Independence - December 30, 2020 - 04:40 PM

communicated this position to Defendants. Instead, the Insureds communicated to Defendants, and maintain to this day, that the Insureds were only required to pay the amount of a single deductible – specifically the lowest applicable deductible of $85,000 – under the terms of the P&I Policies and applicable law, and all other amounts incurred by the Insureds in connection with the Underlying Action are covered under the P&I Policies and should have been paid by Defendants. Nonetheless, the Insureds accepted the Defendants' contributions toward settlement subject to a complete reservation of rights to pursue additional recovery from the Defendants.

43. The Insureds now seek under the P&I Policies all coverage to which they are entitled in connection with the Underlying Action.

## COUNT I
## **BREACH OF CONTRACT**

44. The Insureds incorporate by reference all previous allegations as though set forth fully herein.

45. The Insureds have incurred and paid sums, including defense costs, maintenance and cure benefits, and settlement costs, in connection with the Underlying Action that fall within the coverage and limits afforded under the P&I Policies.

46. The Insureds and/or their affiliates or predecessors-in-interest paid Defendants all required premiums in consideration for the coverage provided by the P&I Policies and have complied with all obligations and conditions precedent in the P&I Policies.

47. The Defendants have declined to acknowledge coverage for sums arising from the Underlying Action that are covered under their respective Policies, specifically denied coverage for these amounts, and/or manifested an intent not to perform their obligations to cover these amounts in connection with the Underlying Action, and are in breach of their contracts of insurance.

48. As a direct and proximate result of this breach, the Defendants are liable to the Insureds for actual damages in the amount of $1,685,000 paid by the Insureds in connection with the Underlying Action, together with the costs and disbursements of this action, including but not limited to, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

## COUNT II
## VEXATIOUS REFUSAL TO PAY
### (MO. REV. STAT. §§ 375.296 and 375.420)

49. The Insureds incorporate by reference all previous allegations as though set forth fully herein.

50. The Insureds have incurred and paid sums, including defense costs, maintenance and cure benefits, and settlement costs, in connection with the Underlying Action that fall within the coverage and limits afforded under the P&I Policies.

51. The Defendants are aware of their obligations under the P&I Policies to pay these amounts incurred and paid by the Insureds in connection with the Underlying Action. However, to date, and despite the Insureds' repeated demands, the Defendants have, without reasonable cause or excuse, failed or refused to reimburse, or pay on behalf of, the Insureds such sums paid by the Insureds in connection with the Underlying Action. In doing so, the Defendants have acted wrongfully, unreasonably, and vexatiously.

52. Defendants have also refused, and continue to refuse, to accord any reasonable interpretation to the provisions in the P&I Policies and have refused, and continue to refuse, to accord any reasonable application of such provisions to the claims of the Insureds and/or their predecessors-in-interest arising from the Underlying Action. In so refusing, the Defendants have acted to protect their own financial interests in disregard of the interests of its insureds.

53. The Defendants owe to the Insureds a fiduciary obligation and duty of good faith and fair dealing. However, the Defendants, knowing that the demands of the Insureds and/or their predecessors-in-interest for coverage under the P&I Policies for sums paid in connection with the Underlying Action were and are wholly justified and valid, have in bad faith, and in breach of the covenant of good faith and fair dealing, withheld and denied insurance proceeds owed to the Insureds under the P&I Policies.

54. Pursuant to Missouri Revised Statutes Sections 375.296 and 375.420, this Court has the statutory authority to impose additional damages and award attorneys' fees to the Insureds as the result of the Defendants' wrongful conduct.

55. As a direct and proximate result of Defendants' wrongful conduct, the Defendants are liable to the Insureds for actual damages in the amount of $1,685,00 incurred and paid by the Insureds in connection with the Underlying Action, together with the costs and disbursements of this action, including but not limited to, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and other costs and additional damages allowed pursuant to Missouri Revised Statutes Sections 375.296 and 375.420.

## COUNT III
## DECLARATORY JUDGMENT

56. The Insureds incorporate by reference all previous allegations as though set forth fully herein.

57. The Insureds have incurred and paid sums, including defense costs, maintenance and cure benefits, and settlement costs, in connection with the Underlying Action that fall within the coverage and limits afforded under the P&I Policies.

58. The Defendants have declined to acknowledge coverage for sums arising from the Underlying Action that are covered under their respective Policies, specifically denied coverage

for these amounts, and/or manifested an intent not to perform their obligations to cover these amounts in connection with the Underlying Action. The Defendant have specifically failed or refused to reimburse the Insureds for $1,685,000 in defense costs, maintenance and cure benefits and settlement costs paid by the Insureds in connection with the Underlying Action.

59. By reason of the foregoing, a genuine dispute and actual justiciable controversy exists between the Insureds and the Defendants regarding the Defendants' obligations to pay all sums incurred and paid by the Insureds in connection with the Underlying Action that fall within the coverage and limits afforded under the P&I Policies, specifically the sum of $1,685,000 in defense costs, maintenance and cure benefits, and settlement costs paid by the Insureds in connection with the Underlying Action.

60. The Insureds thus seek a judicial declaration by this Court of the Defendants' obligations under the P&I Policies to reimburse the Insureds for $1,685,000 in defense costs, maintenance and cure benefits and settlement costs paid by the Insureds in connection with the Underlying Action. For the foregoing reasons, such a judicial declaration is necessary and appropriate. The court may make an award of additional costs, including but limited to attorneys' fees, as may seem equitable and just pursuant to Missouri Revised Statutes Section 527.100.

## **PRAYER FOR RELIEF**

WHEREFORE, the Insureds respectfully pray for a judgment against the Defendants for the following:

(a) Actual damages in the amount of $1,685,000;

(b) Pre-judgment and post-judgment interest based upon and added to the damages as allowed by law;

(c) Attorneys' fees and costs associated with this action, in part pursuant to Missouri Revised Statutes Section 527.100;

(d) Statutory and additional damages allowed pursuant to Missouri Revised Statutes Sections 375.296 and 375.420 and other bad faith statutes and laws to the extent applicable;

(e) Additional consequential and/or punitive damages to the extent allowed by law;

(f) A declaration that the Defendants are obligated under the P&I Policies to pay on behalf the Insureds such sums the Insureds have incurred in connection with the Underlying Action that fall within the coverage and limits afforded under the P&I Policies; and

(g) Such other and further relief to which the Insureds may be entitled or as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs Holliday Sand & Gravel Company, Inc. and Ash Grove Aggregates, Inc. demand a trial by jury for all issues so triable.

Date: December 30, 2020                Respectfully submitted,

                                       LATHROP GPM LLP

                                       By: /s/ *Sarah E. Millin*
                                           Sarah E. Millin #55250
                                           Noah H. Nash #72048
                                           2345 Grand Blvd., Ste. 2200
                                           Kansas City, MO 64111
                                           (816) 292-2000
                                           (816) 292-2001 (fax)
                                           sarah.millin@lathropgpm.com
                                           noah.nash@lathropgpm.com

                                           *Attorneys for Plaintiffs Holliday Sand & Gravel Company, Inc. and Ash Grove Aggregates, Inc.*